### STAUFFER, ESTATE OF, In Re,

### REHMERT et, Applicants-Appellants v. REQUARTH, Admr., Appellee.

Ohio Appeals, Second District, Darke County.

No. 600. Decided February 2, 1943.

Walter F. Rhynard, Greenville, for appellants, Katie Rehmert and Clara Gerlach.

L. E. Kerlin, Greenville, E. E. Riegel, Greenville, for Charles F. Meyer.

George W. Porter, Greenville, T. A. Billingsley, Greenville, for C. Walter Requarth, Administrator.

**OPINION**

By HORNBECK, J.

This is an appeal on questions of law from an order of the Probate Court refusing to remove C. Walter Requarth, Administrator of the estate of Lottie C. Stauffer, deceased, upon the application of appellants.

Lottie C. Stauffer a resident of Darke County died on November 3, 1941, at Greenville, Ohio, leaving some twenty-three known persons of the full blood, the half-blood and of the blood of her deceased husband surviving next of kin and heirs-

at-law, together with the unknown heirs of seven other deceased persons, who, if living and known would also take of the estate of decedent. On the 7th of November, C. Walter Requarth made application to the Probate Court of Darke County to be named administrator of the estate of Lottie C. Stauffer and therewith tendered his bond and the waivers of administration of Clara Gerlach and Katie Rehmert, half-sisters of decedent who recommended the appointment of Requarth. These waivers were dated November 7, 1941. The court appointed the applicant and he qualified and was and is the acting administrator of decedent's estate.

On November 17, 1941, Katie Rehmert filed an application in the Probate Court for removal of the administrator assigning as grounds therefor, that the appointment of the administrator is illegal; that all the next of kin of the decedent were not notified of the application for appointment of said administrator; that the administrator "has unsettled claims and demands which he claims exist between the administrator and the estate of decedent in a large sum, the exact amount of which is not known which, if allowed or collected, will consume a great part of the estate and which claims and demands will necessarily be subject to controversy and litigation between the administrator and the estate and persons interested in said estate"; that the administrator is a non-resident of Darke County, Ohio, and resides in Miami County, Ohio; that the administrator is not a suitable person to carry out the trust.

Later, on December 12, 1941, twelve other persons designated as heirs-at-law and next of kin of Frank Stauffer who was the husband of Lottie C. Stauffer, deceased, and each being persons having an interest in the estate of Lottie C. Stauffer, deceased, filed their application for the removal of the administrator in which they set up as reasons for said removal, the existence of an unliquidated claim on behalf of Requarth against the estate and the further reason of the fraudulent conduct of the administrator in procuring his appointment; because he is not a resident of Darke County and because the interest of the trust and the estate of the said Lottie C. Stauffer demand the removal of said administrator.

Appraisers were duly appointed to appraise the estate of decedent, two of whom apparently qualified but the third, Henry Rehmert, refused to complete his service and a report of two of the appraisers is found with the transcript of docket and journal entries listing total assets in the sum of $19,757.19.

A hearing on the applications to remove the administrator came on before the Probate Judge on December 12, 1941. Nine witnesses testified and a transcript of 181 pages was produced which is before us together with certain exhibits. The Probate Judge refused to remove the administrator.

The record is entirely too long. The testimony was permitted to cover subject matter which in no view of the issues presented on the application could have been competent or relevant. The court was most indulgent and a good part of the evidence consisted of the respective views of the administrator and the applicants for his removal, as to the merits of his claim against the estate. This evidence, except to develop the nature of the claim, its size, and the fact that it was unliquidated and would become the subject of litigation, had no purpose in the record. Other questions were developed far beyond any necessity therefor. So that, to get the competent evidence, the trial judge and this court have been put to the necessity of considering much testimony which should not have been in the record.

Arthur Stauffer, a nephew of Frank Stauffer, deceased, husband of decedent who had pre-deceased her, testified and said that he had knowledge of the claim of C. Walter Requarth against the estate and that as an interested party and an heir of Frank Stauffer, he was not satisfied to have Requarth remain as administrator. At the conclusion of applicants' case, counsel for the administrator moved that the testimony of Stauffer relating to the removal of the administrator be stricken from the record for the reason that §10506-53 GC under which Stauffer's testimony was claimed to be germane had no application to the proceeding. The court sustained the motion and held that the application of the Stauffer heirs, that is the Frank Stauffer heirs, twelve of whom signed an application for the removal, would not be considered. Upon this ruling counsel for the Stauffer heirs proffered no further testimony.

Briefs are filed on behalf of Katie Rehmert, Clara Gerlach, Fred Requarth, and Ed Requarth, who are therein noted as appellants, and a brief filed on behalf of Charles F. Meyer et, as appellants, who are the blood relatives of Frank Stauffer, deceased.

An examination of the docket and journal entries discloses that the only notice of appeal is given by Katie Rehmert and Clara Gerlach. We must assume that the record is complete and that no notice of appeal was noted on behalf

of Charles F. Meyer et. The notice of appeal which is found among the papers is on questions of law and fact as well as upon questions of law, but it is agreed that the appeal is on questions of law only. There is a bill of exceptions duly authenticated and errors assigned.

Inasmuch as there is no appeal by proper notice by Charles F. Meyer et, there is nothing on their behalf before this court for consideration. We, therefore, are restricted in this opinion to the appeal of Katie Rehmert and Clara Gerlach which as to errors assigned is identical in several particulars with those assigned in the briefs of Charles F. Meyer et.

Appellants assign the following errors:

1. The judgment of the court in dismissing their applications for the removal of the administrator is against the weight of the evidence.

2. The court erred in dismissing and striking out the testimony of Arthur Stauffer, one of the heirs-at-law of Lottie C. Stauffer and next of kin of Frank Stauffer, her husband.

3. The court failed to take cognizance of the fact that the claim of C. Walter Requarth of $5,450.00 is almost one third of the whole estate and to permit him to remain in as administrator makes it difficult for the other heirs to defend the estate against this claim.

4. The court failed to take into account the fact that a large number of heirs-at-law are opposed to him remaining as administrator.

5. The court failed to take into account the manner that C. Walter Requarth administered his trust under the power of attorney.

6. All other errors which might be apparent on the face of the record.

We discuss some of these assignments of error out of their chronological order but preliminary to reaching the main and determinative question in the cause.

Assignment of error No. 2 is directed to action of the court in striking out the testimony of Arthur Stauffer to which we have heretofore alluded. This assignment is not made upon the record. The testimony was proffered by Mr. Kerlin who was counsel of record for Charles F. Meyer et, the blood relatives of Frank Stauffer, deceased. Mr. Kerlin only noted the exception to the ruling of the court. So that, upon the record, counsel for appellants neither proffered the testimony nor noted any objection or exception to the refusal of the court to receive the testimony nor preserved in any manner any objection or exception to the ruling of the trial judge.

Assignment of error No. 3 is directed to the failure of the court to take cognizance of the fact that the Requarth claim was $5,450.00, almost one third of the whole estate, and that to permit the administrator to continue in his duties would make it difficult for the other heirs to defend against his claim. This assignment of error in the form presented cannot be supported because we must assume that the court took into consideration all of the record, including the testimony respecting all the facts and details relating to the Requarth claim.

The record presents a somewhat anomalous situation. The hearing on the application was concluded on December 18, 1941. The entry journalizing the finding of the court that the administrator should not be removed was filed February 5. There is found in the transcript of journal entries an application of C. Walter Requarth for allowance of his claim against the estate of Lottie C. Stauffer filed of date, February 7, 1942. The itemized statement of the claim of Requarth set forth in the form of a petition aggregates $5,450.00, made up of four separate items, one of which extends over a period of 219 weeks beginning November 3, 1935. The bill of exceptions was dated April 9, 1942. It thus appears that the specific claim of Requarth was not before the court at the time of the hearing on the applications for removal and probably not at the time of his oral announcement of his decision to refuse removal. However, there is enough testimony as to the nature of the claims which Requarth meant to assert against the estate to afford the Probate Judge and this court a fair understanding of the extent and character of such claims. It, also, is obvious that there is a disposition on the part of many of those who will take under the estate of decedent to question every claim asserted by Requarth and the amount of compensation that should be awarded to him.

The fourth assignment of error is supported factually because it is obvious that, when the court struck all of the testimony of Arthur Stauffer reached by the motion of counsel for the administrator, he thereby failed to take into account the opposition of these heirs to the continuance of Requarth as administrator. Our attention is directed to our holding in **Boedeker et v Herr, Adminstratrix, 30 Abs 374,** in which it is said in the second headnote,

"The fact that a number of beneficiaries from the proceeds of a farm in a trust estate did not maintain friendly rela-

tions to the administratrix and were of the opinion that the best interests of all beneficiaries would be conserved by her removal, though not decisive, may be properly considered along with other facts and circumstances touching the ultimate question of what was in the best interests of the trust."

We would so hold in the instant case and we believe that the testimony was competent for the purpose for which we have just discussed but the failure to receive it, though probably erroneous, was not in our judgment so prejudicial as to be the basis of the reversal of the order. It is probable that court and counsel at the time of the ruling were considering this testimony as proffered under §10506-53 GC.

The action of the court in striking the testimony of Arthur Stauffer also brings into consideration the terms of §10506-53 GC, which in part provides,

"That the Probate Court may remove any such fiduciary * * *, for habitual drunkenness, neglect of duty, incompetency, fraudulent conduct, because the interest of the trust demands it, or for any other cause authorized by law, and **may remove a trustee upon the written application of more than one-half of the heirs, or next of kin, or legatees having an interest in such estate controlled by such trustee,** * * *." (Emphasis ours.)

The application of this statute is brought into this record only upon the testimony proffered by counsel for the Frank Stauffer heirs and as we have heretofore indicated, it is not properly before the court and our observation is nothing more than obiter. If it appeared, which it does not, that the requisite number had signed the application, we would not hesitate to express the opinion that the court was right in the determination that the emphasized portion of the section has reference to a trustee only as distinguished from an administrator or an executor. True the term "fiduciary" is broad enough to include trustee but inasmuch as the term "trustee" only is employed it seems plain that it was not intended to make it inclusive of all fiduciaries contemplated by the first part of the section and as defined in §10506-1 GC.

We cannot support the fifth assignment of error as the basis for a reversal, namely, that the court failed to take into account the manner that C. Walter Requarth administered his trust under the power of attorney. As before stated, we must assume that the court gave consideration to all the testimony

which was admitted. This, then, leaves the first and sixth assignments of error, namely, that the order of the court in dismissing the applications of Katie Rehmert and Clara Gerlach et, is against the weight of the evidence and other errors apparent on the face of the record.

The record develops several facts upon which counsel rely to support the claim that the administrator clearly should have been removed. It is urged by the Meyer et, that Requarth is chargeable with fraudulent misconduct in representations made by him to Katie Rehmert following her signing of the waiver releasing her right to appointment as administratrix and recommending the appointment of Requarth. We discuss this claim, though not required to do so.

What was said and done by Requarth could in no wise constitute fraudulent conduct. It is true that he stated to Katie Rehmert that he would have a claim against the estate and that she could make it possible that he have a deed for one of the farms and that this was not said until after she had signed the waiver. Obviously, these statements were not made to induce the signing of the waiver and, if they had the effect of changing the mind of Mrs. Rehmert as to the propriety of signing, she had ample time and opportunity to take her name off the waiver, or to call the attention of the Probate Judge to the fact that she desired to withdraw her name. It is, no doubt, true that she did not understand that she had a prior right to Requarth to be named administratrix but this cannot be asserted as against her voluntary relinquishment of the right which she cannot in law be heard to say she did not know.

It is further claimed that Requarth made representations that he could and would collect a considerable sum of money from the estate because of the failure of Lottie Stauffer in her life time to account to him for an interest in his mother's estate to which he was entitled and which money came into the hands of Lottie Stauffer. It is difficult to understand why he did not know his status respecting the receipt of this money. In open court his counsel acknowledged that there was no liability of the estate to Requarth on this claim.

There was a transaction wherein Requarth after he was appointed administrator took a bill of sale from Mrs. Stauffer for a 1937 Chevrolet automobile which instrument recited One Dollar and other considerations. The bill of sale was made on June 29, 1940, and the certificate of title was dated July 10, 1940. The consideration which actually was paid for the auto-

mobile according to the statement of Requarth was $50 which sum, after the taking of the automobile, he placed to the credit of Lottie Stauffer in the bank. It developed that Lottie Stauffer had offered to sell this automobile to another relative of hers for $50.00.

The power of attorney under which Requarth was acting for Lottie Stauffer was broad and would have authorized the sale of this automobile by her attorney in fact. Such transactions as here occurred are not looked on with favor in the law. The general principle is well recognized that an agent may not place himself in a position antagonistic to his principal which absolutely precludes the agent from dealing with himself, either directly or indirectly. 1 O. Jur. 772. It is always a dangerous principle for an agent to buy from his principal and if there is any overreaching, it is incumbent upon the agent to make restitution. This rule is so well recognized that it is carried into statutory provision prohibiting an administrator from buying from his estate. §10506-49 GC.

There was, also, some suggestion that the administrator may have been instrumental in preventing the appraisal of certain chairs and canned fruit of decedent and in failing to provide the appraisers with information respecting the amount of corn in the possession of decedent at the time of her death and that he had given a radio of Mrs. Stauffer to Katie Rehmert.

It, also, developed that after the death of Mrs. Stauffer, Mr. Requarth, her attorney in fact, went to her bank and there signed a note as attorney in fact for $450.00 for funeral expenses. This was irregular and unauthorized. In all probability, the attorney in fact knew no better but the banker certainly should have understood the irregularity of the whole transaction.

None of this testimony reached the dignity of probative evidence of any fraudulent conduct on the part of the administrator.

The outstanding fact which we are unable to surmount is the nature and extent of the claim of Requarth against the estate which he is authorized to administer. It is basic that it is desirable that an administrator be impartial as between heirs at law or next of kin of the decedent whose estate he is administering. Obviously that is impossible in the situation here presented. The statute recognizes the danger of this factual development as provided in §10509-19 GC,

"The Probate Court may remove any executor or administrator if there are unsettled claims or demands existing between him and the estate, which the court thinks may be the subject of controversy or litigation between him and the estate, or persons interested therein."

The statute authorizes the removal of the administrator under the terms of the statute even if he thinks that the unsettled claims or demands may be the subject of·controversy or litigation. Here it is clear that they are the subject of controversy and litigation. The statute very properly reads "may" instead of "must" because obviously there will be liquidated claims which the individual who is the administrator holds against an estate, either because of the nature or the amount of which would in no wise authorize his removal, but in the instant case, the claims of Mr. Requarth arise out of numerous transactions covering a period of years and aggregating an unliquidated amount of more than a fourth of the total inventory of the estate.

Obviously, the heirs at law and next of kin of decedent and her former husband, will be arrayed for and against the claim of Requarth. The statute does authorize the Probate Court to name an attorney to represent the estate and to defend against the claim. Notwithstanding, the administrator has a distinct advantage. By virtue of his appointment he comes into possession of all the private papers, documents, and records which his decedent may own. He transacted her business up until the time of her death and for approximately two years prior thereto. If, among her papers there was any document which tended in any degree to absolve her from· liability, this would come into the possession of the administrator. If there is any aftermath respecting the automobile transaction, this will require an action wherein the administrator is individually interested.

The effect of hostile or adverse interests of an administrator on his right to continue in that relationship is set out in 33 C. J. S. at 1036,

"An executor or administrator should be removed where his personal interests conflict with his official duties, or even where there is such a hostile feeling between him and the beneficiaries as would or might interfere with the proper management of the estate, * * *, altho the fact that it has

been held that the representative is a creditor of the estate is not in itself sufficient ground for removal."

A recent case from the Hamilton County Court of Appeals, **Fisher, Exrx. v Houlscott et,** no opinion, affirming the Probate Court, motion to certify filed in the Supreme Court under No. 29390, December 17, 1942 and motion to certify overruled O. L. R. January 18, 1943, presented the question whether or not the action of the Probate Court was erroneous in refusing to appoint a person named as executrix in the will of testator because of antagonism and hostility among the next of kin who were members of decedent's immediate family and the named executrix. The section under consideration, §10509-2 **GC,** provides that the qualifications for appointment of an executor are that he be competent and suitable.

Counsel for appellee cite in the Supreme Court in the above case **In re Estate of Sells, 5 O. N. P. (N. S.) 629; Long v Bowersox, 8 O. N. P. (N.S.) 249; Re-appointment of Administratrix, 10 O. Dec. 731; In Diller's Application, 5 O. N. P. 255; In re Lizzie Brennan, 5 O. N. P. 490, 492, 493,** all of which have some applicability to the question here under consideration.

The application to remove comes at a time in the administration when it will not seriously disturb the orderly winding up of the estate and before the administrator has taken on any considerable activity in its settlement.

We are satisfied that the facts here developed require that some person other than the present administrator should be charged with the administration of Mrs. Stauffer's estate. It is only fair and equitable to the numerous heirs and next of kin that an impartial person serve as fiduciary. The court can regulate this appointment to assure the impartial administration of this estate.

The application to remove the administrator should have been sustained upon the ground that it is for the best interest of the trust that it be done and particularly because of the unsettled claims and demands existing between him and the estate. The record supports our judgment by the requisite degree of proof. The order of the Probate Court will be reversed and cause remanded.

GEIGER, P. J., and BARNES, J., concur.