[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
This is an appeal from the Lake County Court of Common Pleas, Probate Division. Dr. Frank Veroni died on March 31, 1996. This case involves discussion and interpretation of several documents that might have affected the distribution of Dr. Veroni's property upon his death. These documents are: (1) the Last Will and Testament dated October 10, 1986 ("the 1986 will"); (2) The Frank Veroni Trust No. III dated October 10, 1986 ("Trust No. III"); (3) The Frank Veroni Trust No. II dated June 30, 1989 ("Trust No. II"); (4) The Frank Veroni Special Trust Agreement dated July 28, 1993 ("the Special Trust"); and (5) the Last Will and Testament dated March 13, 1996 ("the 1996 will"). Each trust is an intervivos trust.
Each of these documents was prepared by William A. Carlin ("William") and witnessed by William and his father, Clarence C. Carlin ("Clarence"), who practice law together in the firm of Carlin Carlin.[1] Clarence met Dr. Veroni in 1961, when Clarence was a trust officer at Central National Bank. Clarence became Dr. Veroni's financial advisor, and the two became close friends. William began to represent Dr. Veroni in legal matters in 1985.
In order to address all of the legal issues involved in this case, a detailed discussion of each of the foregoing trusts and wills is in order. The 1986 will named William and Clarence as co-executors of the estate. This will stated that each of the co-executors was to receive "the same fee as though each were serving as sole executor hereunder." The dispositive provisions of the will left the bulk of Dr. Veroni's estate to three trusts. William and Clarence were co-trustees of each of these trusts, and Clarence and his wife, Marion L. Carlin, were beneficiaries of Trust No. II, and their children, including William, were successor beneficiaries. William and Clarence were the sole witnesses to the 1986 will.
On March 13, 1996, just three weeks before his death, Dr. Veroni executed the 1996 will, which was drafted by William, and witnessed by William and Clarence. The 1996 will was substantially similar to the 1986 will, except that it increased the bequest to Trust No. II from $175,000 to $250,000. Again, William and Clarence were named as co-executors and their compensation was the same as in the 1986 will. After Dr. Veroni's death, $250,000 was distributed to Trust No. II. William and Clarence, as co-trustees, used approximately $230,000 of the principal to pay off a commercial loan from Perrydale Partners, Inc., a corporation whose shareholders were Dr. Veroni, William, Clarence, and another person not identified in the record before this court.
William and Clarence were co-trustees of the Special Trust, which was created in 1993, and was funded by a $500,000 bequest. This trust provided that upon Dr. Veroni's death, his wife, Dinah Veroni, would receive all the net income from the trust. Moreover, she would receive "such amounts of principal that the trustee from time to time shall deem desirable to provide for her comfort and welfare." Upon Dinah Veroni's death, the remaining principal was to be transferred to Trust No. III.
William and Clarence were also co-trustees for Trust No. III, which provided that all income was payable to Dr. Veroni during his lifetime, with the principal being paid if the trustees deemed it necessary or advisable. During Dr. Veroni's lifetime, this trust held most of his assets. The funds in the trust totaled approximately $1,275,000. The trust provided that upon Dr. Veroni's death, the trustees were to pay the executor "such amounts from the principal of property then held by the trustee as my executor may request for the purpose of paying debts of my estate, bequests made by me under my Last Will and Testament, taxes including income, estate or any other tax liability due from me at the time of my death, administration expenses of my estate and any other amounts that may be payable as determined by my executor." Pursuant to the account submitted by Clarence and William to the probate court, $1,275,000 was transferred from Trust No. III to the estate to satisfy the specific bequests and to pay the debts and administration expenses of the estate.
Moreover, Trust No. III provided that after Dr. Veroni's death, and the payment of the foregoing expenses, the remaining principal was to be held as a charitable trust to be known as "The Frank Veroni Charitable Trust." William and Clarence, as co-trustees, were to distribute the remaining income and/or principal to certain qualified charities under the Internal Revenue Code. Trust No. III stated that income was to be paid quarterly, but did not mandate any payment of principal. According to the estate tax return filed by William and Clarence, $130,184.15 was taken as a charitable deduction from Trust No. III.
Trust No. II was created in 1989, naming William and Clarence as co-trustees, and states that income and principal were payable to Dr. Veroni. Upon Dr. Veroni's death, the trust provides that the income is payable to Clarence and his wife, Marion Carlin. Furthermore, the trust indicates that the principal is payable to Clarence and Marion Carlin for their comfort and welfare within the discretion of the trustees, William and Clarence. Upon the death of Clarence and Marion Carlin, the principal was to be distributed to their lineal descendants, one of whom is William. The 1996 will bequeathed $250,000 to Trust No. II.
Dr. Veroni died on March 31, 1996, and the probate court appointed Clarence and William as co-executors. In a judgment entry filed on February 11, 1997, pursuant to R.C. 2109.29, the probate court, on its own motion, ordered an investigation of the trust estate of Dr. Veroni, and appointed Richard T. Spotz ("Spotz"), an attorney, to conduct the investigation.
Spotz filed his investigator's report on April 18, 1997. He concluded that the bequests to the Carlins were void as against Ohio law and public policy. Specifically, he concluded that the $250,000 bequest to Trust No. II, which benefited the Carlins, was the product of undue influence. Moreover, Spotz determined that the bequests to the Carlins were void because they violated R.C.2107.15, which nullifies any bequest to a witness of the will. Spotz also stated that the provision of double executor fees and trustee fees was excessive and suggested that the probate court hold a hearing to determine the appropriate compensation for the executors of the estate. Finally, Spotz stated that the activities of William and Clarence relating to Dr. Veroni's estate was unethical. In summary, Spotz recommended that the probate court "set a hearing to determine whether or not the Carlins can rebut the presumption of undue influence, rule on the appropriate amount of attorney's fees and executor's commission and decide whether or not the $250,000.00 bequest to the Carlins should be returned to the estate."
On May 7, 1997, the probate court held an evidential hearing during which Spotz, William, and Clarence testified. In a judgment entry filed on May 9, 1997, the probate court held that: (1) William and Clarence were removed as co-trustees of Trust No. III; (2) William and Clarence were to file an accounting with respect to Trust No. III within 30 days of the May 7, 1997 hearing; (3) Barry Byron, an attorney, appellee in this matter, was appointed successor trustee of Trust No. III.
Furthermore, in a judgment entry filed on May 19, 1997, the probate court held that: (1) the $250,000 bequest made to Trust No. II was void and that those funds should be returned to the estate; and (2) no executor or attorney fees should be paid from the Estate of Frank Veroni to William or Clarence. Pursuant to the request of Clarence and William, on June 27, 1997, the probate court filed findings of fact and conclusions of law in relation to its judgment. Also, on May 19, 1997, William filed a disclaimer renouncing all interests in Trust No. II.[2]
Appellants filed a timely notice of appeal from the May 19, 1997 judgment entry, and assert the following assignments of error:
 "[1.] The probate court erred by voiding the bequest to Trust No. II because the appellants who did not witness the will are wrongfully deprived of the trust benefits.
 "[2.] The probate court erred as a matter of law in removing Clarence and William Carlin as trustees of Trust No. III."
In the first assignment of error, appellants argue that the probate court erred in voiding the $250,000 bequest to Trust No. II. Appellants do not contest the probate court's judgment voiding the bequest to Clarence and the potential benefit of that bequest to William. Instead, they assert that the probate court erred by voiding the bequest to Marion Carlin, Elizabeth Whalen, Joan McCarthy, Catherine Burkey, Mary Ellen Comella, and Teresa Carlin because they did not witness the 1996 will, but are beneficiaries of Trust No. II. Moreover, these appellants argue that they were denied due process of law because they did not have notice of the May 7, 1997 hearing regarding the validity of the $250,000 bequest to Trust.
R.C. 2107.15 states that "[i]f a devise or bequest is made to a person who is one of only two witnesses to a will, the devise or bequest is void." Void has been defined as:
 "Null; ineffectual; nugatory; having no legal force or binding effect; unable, in law, to support the purpose for which it was intended. An instrument or transaction which is wholly ineffective, inoperative, and incapable of ratification and which thus has no force or effect so that nothing can cure it." Black's Law Dictionary (6 Ed. Abr. 1991) 1086.
In the present case, only William and Clarence witnessed the signing of Dr. Veroni's 1996 will. The 1996 will bequeathed $250,000 to Trust No. II, which provides that the income is payable to Clarence and his wife, Marion. Trust No. II provides that the principal is payable to Clarence and Marion for their comfort and welfare within the discretion of the trustees, William and Clarence. Upon the death of Clarence and Marion, the principal was to be distributed to their lineal descendants, one of whom was William. Pursuant to the express language of R.C.2107.15, the bequest to Trust No. II, to the extent that it was to benefit William and Clarence is void.
The next issue is whether the bequest to Trust No. II was void to the extent that it was to benefit Marion and the Carlin children (except for William). However, before addressing that substantive issue, we must decide whether the other potential beneficiaries were entitled to notice of the hearing at which argumentation was heard on the issue of whether the entire bequest to Trust No. II was void. Additionally, we must decide whether the other beneficiaries were entitled to an opportunity to be heard at the hearing. In Palazzi v. Estate of Gardner (1987),32 Ohio St.3d 169, 172, the Supreme Court of Ohio held that a contingent beneficiary of a will has a property interest that entitles him or her to due process protections. In explaining the importance of due process in the context of providing an opportunity to be heard, the Supreme Court of the United states has stated:
 "For more than a century the central meaning of procedural due process has been clear: `Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' Baldwin v. Hale, 1 Wall. 223, 233. * * * It is equally fundamental that the right to notice and an opportunity to be heard `must be granted at a meaningful time and in a meaningful manner.' Armstrong v. Manzo, 380 U.S. 545, 552 * * *." (Citations omitted.) Feuntes v. Shevin
(1972), 407 U.S. 67, 80. See, also, Palazzi, 32 Ohio St.3d at 171.
In the present case, the record does not indicate that the other potential beneficiaries received notice of the hearing regarding the investigator's report. As a result of that hearing, the trial court voided the bequest to Trust No. II, which, in effect, eliminated the interest of the other beneficiaries. However, they did not receive notice of that hearing. The record before this court reveals that notice of that hearing was sent to: (1) Attorney Richard A. Henning, who represented William and Clarence as co-executors of Dr. Veroni's estate;[3] (2) William and Clarence; and (3) Spotz, the investigator. Although the record does not indicate how the Attorney General of Ohio received notice of the hearing regarding Spotz's report, she was represented at the May 7, 1997 hearing by Attorney Monica Moloney.
However, the record completely lacks any indication that Marion Carlin, Elizabeth Whalen, Joan McCarthy, Catherine Burkey, Mary Ellen Comella, and Teresa Carlin had notice of the May 7, 1997 hearing, or that their interests were represented at that time. We perceive no evidence that Attorney Vail represented their interests. This conclusion is supported by the following colloquy:
 "MR. VAIL: * * * But let me so that we don't spend needless court time and court of appeals time and everything else, I have some concern because I don't think the sisters have been noticed, served. I don't think the wife has been noticed, served.
* * *
 "THE COURT: Maybe the whole thing is replete with error because the I's haven't been dotted and the T's crossed and I admit to that. * * *"
Moreover, Spotz admitted that he was "also very concerned about family members who are not represented * * *."
Therefore, because the other beneficiaries did not have notice and an opportunity to be heard regarding the elimination of their contingent interest in Trust No. II, this matter must be remanded so that they may receive notice and an opportunity to be heard at a hearing at which the issue shall be whether their interests in Trust No. II are rendered void pursuant to R.C. 2107.15. Appellant's first assignment of error is well-taken to this extent only.
In the second assignment of error, William and Clarence contend that the probate court erred by removing them as co-trustees of Trust No. III. The first issue here is whether William and Clarence had sufficient notice of the motion to remove them as co-trustees. R.C. 2109.24, which addresses the removal of fiduciaries, states, in pertinent part:
 "The court may remove any such fiduciary, after giving the fiduciary not less than ten days' notice, for habitual drunkenness, neglect of duty, incompetency, or fraudulent conduct, because the interest of the trust demands it, or for any other cause authorized by law."
 "The court may remove a trustee upon the written application of more than one half of the persons having an interest in the estate controlled by the trustee, but the trustee himself is not to be considered as a person having an interest in the estate under the proceedings; except that no trustee appointed under a will shall be removed upon such written application unless for a good cause."
This court has stated that the plain meaning of this statute "`is that the fiduciary is entitled to not less than ten days notice of the application for removal.'" In Re: Trust Under theWill of Sharon Gabriel (June 14, 1996), Lake App. No. 95-L-063, unreported, at 5, quoting In the Matter of the Estate of Kavirisv. Bowman (Jan. 14, 1987), Summit App. No. 12679, unreported.
In the case at bar, the record reveals that William and Clarence did not have any notice whatsoever that a motion to remove them as co-trustees of Trust No. III would have been at issue at the May 7, 1997 hearing. First, the motion to remove them as co-trustees was not filed until the day of the hearing. Second, although Spotz's report is highly critical of the conduct of William and Clarence, the report does not explicitly recommend their removal as co-trustees of Trust No. III. Therefore, the probate court erred by failing to provide William and Clarence with a ten-day notice of the motion to remove them as co-trustees.
Appellants also contend that the probate court committed error by permitting the Attorney General to request their removal as co-trustees pursuant to R.C. 2109.24. First, William and Clarence assert that the last paragraph of R.C. 2109.24, which requires the application of more than one-half of the persons with an interest the estate to file a motion to remove a trustee, prohibits the Attorney General, on its own, from moving to remove them as co-trustees. However that requirement applies only to testamentary trustees. In re Estate of Bost (1983), 10 Ohio App.3d 147,148. Cf. Rehmert v. Requarth (App. 1943), 40 Ohio Law Abs. 254, 261. Here, William and Clarence were not testamentary trustees, but instead are trustees of inter vivos trusts. Therefore, requirement that a motion to remove a trustee be brought by one-half of the persons interested in the state is not applicable in the instant matter.
Second, William and Clarence assert that the Attorney General did not have authority and/or standing to file the motion to have them removed as co-trustees. With respect to this argument, the General Assembly has explicitly required that the Attorney General be involved in all judicial proceedings involving a charitable trust. R.C. 109.25. Additionally, R.C. 109.24 states:
 "* * * The attorney general may investigate transactions and relationships of trustees of a charitable trust for the purpose of determining whether the property held for charitable, religious, or educational purposes has been and is being properly administered in accordance with fiduciary principles as established by the courts and statutes of this state."
Thus, although the charitable interests in Trust No. III remain contingent until other bequests and/or costs and expenses have been satisfied, the Attorney General's interest in representing the charitable interests is manifest pursuant to R.C. 109.23 etseq. In fact, by implication, the Attorney General has an interest in the administration of Trust No. III similar to that of the successor beneficiaries of Trust No. II because each of their interests are contingent. Accordingly, the Attorney General had both standing and authority to move the trial court for an order removing William and Clarence as co-trustees of Trust No. III.
In summary, appellants' second assignment of error is with merit only to the extent that William and Clarence did not receive proper notice that the issue of their removal as co-trustees of Trust No. III would be addressed at the May 7, 1997 hearing. However, appellant's second assignment of error is not well-taken with respect to the argument that the Attorney General did not have authority to request the removal of William and Clarence as co-trustees.
For the foregoing reasons, appellants' first assignment of error is well-taken only on the basis that Marion Carlin, Elizabeth Whalen, Joan McCarthy, Catherine Burkey, Mary Ellen Comella, and Teresa Carlin did not have notice and an opportunity to be heard at the May 7, 1997 hearing. Furthermore, appellants' second assignment of error is with merit to the extent that William and Clarence Carlin did not have proper notice of the motion to remove them as co-trustees. Therefore, this cause is reversed and remanded to the Lake County Court of Common Pleas, Probate Division so that a hearing may be held at which Marion Carlin, Elizabeth Whalen, Joan McCarthy, Catherine Burkey, Mary Ellen Comella, and Teresa Carlin have an opportunity to be heard on the issue of whether their interests in Trust No. II are terminated. Additionally, this matter is reversed and remanded for a hearing complying with the ten-day notice requirement of R.C.2109.24 regarding the motion to remove William and Clarence Carlin as co-trustees. __________________________________ PRESIDING JUDGE DONALD R. FORD
NADER, J.,
O'NEILL, J., concur.
[1] William and Clarence are appellants in this appeal. They are parties both in their individual capacities and as co-trustees and co-executors. Additionally, other potential beneficiaries of Dr. Veroni's trusts and estate are appellants. These potential beneficiaries are Marion L. Carlin, Clarence's wife, and the children of Marion and Clarence Carlin: Elizabeth Whalen, Joan McCarthy, Catherine Burkey, Mary Ellen Comella, and Teresa Carlin. The appellees in this matter are Barry Byron, as Successor Executor of the Estate of Frank Veroni, and as Successor Trustee of Trust No. III, and Betty D. Montgomery, the Ohio Attorney General.
[2] The disclaimer states that this was done at a hearing before the probate court on May 6, 1997, but the record indicates that that hearing actually occurred on May 7, 1997.
[3] Attorney Henning filed a motion to withdraw as attorney of record for William and Clarence on May 1, 1997. The probate court granted the motion in a judgment entry filed on May 7, 1997. Although the record is not clear regarding when this occurred, Attorney James D. Vail assumed representation of William and Clarence upon Attorney Henning's withdrawal, and represented William and Clarence at the May 7, 1997 hearing.