OPINION
{¶ 1} Appellants, Justin Jones, Bryan Perry, and Olivia Perry, appeal the decision of the Butler County Probate Court overruling their exceptions to a first partial account of the assets of the estate of Darrell Wayne Perry, and denying their request to remove appellee, Darlene Bishop, as executrix of the estate. We affirm the judgment of the trial court. *Page 2 
 {¶ 2} This case concerns the administration of the estate of decedent, Darrell Wayne Perry. Perry worked in the music industry as a songwriter for much of his life, achieving success with a variety of songs, including those recorded by artists such as Tim McGraw and the Backstreet Boys. Perry's songwriting activities entitled him to receive royalties based upon when his songs were played or performed, or when a record containing any of his songs was sold. Perry received writer royalties from performing rights organizations of which he was a member, including American Society of Composers, Authors and Publishers ("ASCAP"), and Broadcast Music, Inc. ("BMI"), as well as from BMG Zomba Production Music, a music production company which published several of Perry's songs.
 {¶ 3} After being diagnosed with throat cancer in 2002, Perry moved from Tennessee to Ohio. Prior to his death in May 2005, Perry executed three documents relevant to this appeal, including a change of beneficiary form concerning his life insurance policy with State Farm Life Insurance Company, a trust agreement for the establishment of the "Perry Family Trust," and his Last Will and Testament. Attorney Bill Cummins prepared both the trust agreement and will on Perry's behalf.
 {¶ 4} The trust agreement and will were executed by Perry on September 16, 2003, designating Perry's sister, and appellee herein, Darlene Bishop, as trustee of the trust and executrix of his estate. The trust is the sole beneficiary under Perry's will. Perry's four children, including appellants herein, are beneficiaries under the trust. With respect to the life insurance policy, Perry executed a change of beneficiary form on May 14, 2003, changing the primary beneficiary from his ex-wife, Janet Perry, to "Darlene Bishop." In addition, on September 24, 2003, Perry opened a bank account with First Financial Bank, on which appellee is designated a joint owner "with survivorship."
 {¶ 5} Following Perry's death on May 15, 2005, appellee was appointed executrix of Perry's estate pursuant to the terms of his will. Appellants filed a motion to remove appellee *Page 3 
as executrix shortly thereafter, on the basis of alleged conflicts of interest between appellee and the estate. On July 31, 2006, in accordance with the probate court's order, appellee filed a partial fiduciary account, setting forth her administration of Perry's probate estate through the close of business on June 30, 2006.
 {¶ 6} Appellants filed exceptions to the account, claiming, in relevant part, that appellee "secreted" $260,000 in life insurance proceeds that belonged to the estate and/or trust, that appellee should be removed as executrix due to conflicts of interest and her "incompetency" in administering the estate, and that Perry's First Financial bank account was a trust asset that effectively funded the trust prior to Perry's death. On February 12, 2007, following a two-day hearing on the matter, the probate court denied appellants' motion to remove appellee as executrix, and overruled appellants' exceptions to the partial account concerning the life insurance policy and First Financial bank account. With respect to these issues, the court found appellee was entitled to the life insurance proceeds in her individual capacity, rather than as trustee of the trust, and that the First Financial account was not a trust asset.[1]
 {¶ 7} Appellants now appeal the probate court's order, advancing four assignments of error.
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "THE TRIAL COURT ERRED BY AWARDING APPELLEE BISHOP THE *Page 4 
$260,000 LIFE INSURANCE POLICY."
 {¶ 10} In their first assignment of error, appellants argue the probate court erred in awarding appellee, in her individual capacity, life insurance proceeds in the sum of $260,000.
 {¶ 11} As an initial matter, appellants argue the probate court erred in making any determination concerning the life insurance proceeds because the court's limited jurisdiction did not extend to such matters. Appellants, however, have failed to cite any applicable statutory or case law in support of this position.
 {¶ 12} Probate courts are vested "with jurisdiction when a justiciable dispute arises with respect to duties related to the administration of [a testator's] estate." Zuendel v. Zuendel (1992), 63 Ohio St.3d 733,736; R.C. 2101.24(A)(1). See, also, In re Estate of Morrison (1953),159 Ohio St. 285, 286-288; Corron v. Corron (1988), 40 Ohio St.3d 75, 77. Pursuant to R.C. 2101.24(A)(1)(m), for instance, probate courts are vested with jurisdiction "[t]o direct and control the conduct of fiduciaries and settle their accounts * * *."
 {¶ 13} Here, the record indicates that appellants filed exceptions to appellee's first partial account, claiming that appellee "secreted" life insurance proceeds which should have been included in "the estate and/or trust," and that appellee was not entitled to the proceeds in her individual capacity. As such controversy concerns the administration of the decedent's estate, including the duty of appellee to file an account of estate assets pursuant to R.C. 2109.30, we find the probate court did not err in ruling upon this issue.
 {¶ 14} Appellants next contend the life insurance proceeds should have been treated as trust funds, and that the decedent's designation of appellee as beneficiary of the insurance policy intended that she act as trustee with respect to such proceeds. We find appellants' arguments without merit.
 {¶ 15} "A reviewing court shall not disturb the findings of the probate court absent an abuse of discretion." In re Bird, Cuyahoga App. No. 85130, 2005-Ohio-2186,¶ 8, citing In re *Page 5 Estate of Whitmore (1983), 13 0hio App.3d 170, 171. To constitute an abuse of discretion, a court's ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. "Regarding factual determinations, a trial court will not be reversed where there is some competent, credible evidence going to all essential elements of the case." Whitaker v. Estate of Whitaker (1995), 105 Ohio App.3d 46, 53, citing Sec. Pacific Natl. Bank v. Roulette (1986), 24 Ohio St.3d 17, 20
and C.E. Morris Constr Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279. "Under this highly deferential standard of review, even `some' evidence is sufficient to sustain the judgment and prevent a reversal if it applies to all the essential elements of the case." Id., citingChicago Ornamental Iron Co. v. Rook (1915), 93 Ohio St. 152.
 {¶ 16} Proceeds payable to a named beneficiary in a life insurance policy are not included in a decedent's probate estate. Adams v.Adams, Warren App. No. CA2002-09-087, 2003-Ohio-3703, ¶ 16, citing In reGatch's Estate (1950), 153 Ohio St. 401, 403. "It is axiomatic that life insurance is a matter of contract." Shuerger v. Wehner (June 25, 1998), Cuyahoga App. No. 72477, 1998 WL 338072, at *8, citing Karabin v. StateAuto. Mut. Ins. Co. (1984), 10 Ohio St.3d 163. Accordingly, proceeds from insurance policies are payable "under the terms of the insurance contract and are not administered." In re Estate of Justice (Aug. 24, 1993), Pickaway App. No. 93CA2, 1993 WL 335010, at *4. See, also,Shuerger, citing White v. Ogle (1979), 67 Ohio App.2d 35.
 {¶ 17} The interpretation of terms of a written contract is generally a matter of law. Driftmeyer v. Carlton, Lucas App. No. L-06-1029,2007-Ohio-2036, ¶ 42, citing Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph one of the syllabus. "The primary objective in making such a determination is to ascertain the intent of the parties." Id., citing Ohio Water Dev. Auth. v. Western Res. WaterDist., 149 Ohio App.3d 155, 2002-Ohio-4393,¶ 25. Courts must therefore give the agreement "a just and reasonable construction *Page 6 
that carries out the intent of the parties as evidenced by the contractual language." Id.
 {¶ 18} In this case, the record indicates that Perry obtained a life insurance policy with State Farm Life Insurance Company on or about November 12, 1999, originally designating Janet Perry as primary beneficiary and his minor son as successor beneficiary thereunder. The policy expressly provides that the insured "may make a change" in beneficiaries "while the insured is alive by sending us a request. The change will take effect the date the request is signed * * *." The policy also provides that the beneficiary "is as shown in the application unless you make a change. It includes the name of the beneficiary and the order and method of payment * * *."
 {¶ 19} The record indicates that in accordance with the terms of the policy, Perry executed a change of beneficiary form on May 14, 2003, designating appellee as the primary beneficiary of the policy, and his minor son as successor beneficiary. Specifically, the primary beneficiary is designated on the form as follows: "Darlene Bishop/58 yrs old/P.O. Box 300 Monroe, Ohio/45050." The method of settlement is designated as "one sum."
 {¶ 20} Significantly, our review of the record yields no indication that Perry executed any subsequent change in beneficiaries. While the record indicates that Perry executed a trust agreement on September 16, 2003, creating a trust for the benefit of his children, there is no indication that Perry sought to change beneficiaries under the State Farm policy at any time thereafter, or to transfer the policy to appellee to hold in trust.
 {¶ 21} The trust agreement provides that "[t]he Trustee agrees that she will hold all property (including * * * insurance policies (or proceeds) on my * * * life) that may be transferred to the Trustee
* * * by me, during my lifetime * * * and * * * after my death, by any other person * * *." (Emphasis added.) Significantly, the insurance policy provides that "[t]he Owner is as named in the application, unless changed" and "may exercise any policy provision only by request and while the insured is alive." The policy further provides that the owner "may *Page 7 
change ownership of this policy by sending us a request while the Insured is alive. * * * A change of owner does not change the beneficiary designation."
 {¶ 22} The record contains no indication that Perry sought to change ownership of the policy according to these terms, or otherwise "transfer" the policy or proceeds to appellee in her capacity as trustee. At the time Perry changed the insurance policy beneficiary, the trust was not in existence. Had he subsequently intended the policy or proceeds to be held in trust, or to be included as part of his estate, Perry could have exercised his right under the terms of the policy to change ownership of the same, or change beneficiaries under the policy.
 {¶ 23} Moreover, and significant to this court's analysis, the evidence presented during the hearing on appellants' exceptions indicates that appellee was unaware Perry had designated her as beneficiary of the insurance policy at the time the trust agreement was executed on September 16, 2003. Accordingly, there is no indication that appellee agreed to act as trustee with respect to the policy, for a trust that was not yet in existence at the time the beneficiary designation was made. Similarly, there is no evidence that Perry intended the life insurance policy or proceeds to be held in trust.
 {¶ 24} Finally, our review of the record has produced no indication of fraud, duress, or unconscionable conduct on the part of appellee that would indicate the probate court erred in failing to impose a constructive trust upon the life insurance proceeds. See Ferguson v.Owens (1984), 9 Ohio St.3d 223, 226. "A constructive trust is * * * an appropriate remedy against unjust enrichment. This type of trust is usually invoked when property has been acquired by fraud. However, a constructive trust may also be imposed where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud." Id.
 {¶ 25} Contrary to appellants' assertions, appellee's decision to settle a potential claim *Page 8 
against the estate by paying $90,000 of the life insurance proceeds to Perry's ex-wife is insufficient to support a finding that Perry did not intend to designate appellee as beneficiary under the policy. As appellee testified during her deposition, Perry failed to comply with a divorce decree requiring him to obtain a $90,000 life insurance policy for the benefit of his minor son. Accordingly, appellee decided to settle the claim on her own, from the insurance proceeds she received, to avoid subjecting the estate to the claim. As such, we find the probate court did not err in failing to impose a constructive trust on the insurance proceeds.
 {¶ 26} The probate court found that Perry's execution of the change of beneficiary form on May 14, 2003 effectively changed the primary beneficiary of the life insurance policy to appellee, such that appellee was entitled to the insurance proceeds. Accordingly, and based upon the foregoing, we find the probate court did not abuse its discretion in determining the life insurance proceeds were not part of Perry's probate estate or trust, and that appellee was not required to account for them in her administration of the estate or trust. Appellants' first assignment of error is therefore overruled.
 {¶ 27} Assignment of Error No. 2:
 {¶ 28} "THE TRIAL COURT ERRED BY FAILING TO REMOVE EXECUTRIX DARLENE BISHOP."
 {¶ 29} Appellants also argue the trial court erred in denying their motion to remove appellee as executrix of the estate. Appellants contend appellee should be removed because she is involved in pending litigation with appellants in the general division of the common pleas court, attempted to collect an alleged $20,000 claim against the estate, has a pecuniary interest in the estate, and has acted "incompetently" in her role as executrix.
 {¶ 30} R.C. 2109.24 provides that the probate court may remove a fiduciary who "fails * * * to render a just and true account of the fiduciary's administration at the times required by section 2109.301,2109.302, or 2109.303 of the Revised Code * * *." The probate court may *Page 9 
also remove a fiduciary "for habitual drunkenness, neglect of duty, incompetency, or fraudulent conduct, because the interest of the property, testamentary trust, or estate that the fiduciary is responsible for administering demands it, or for any other cause authorized by law." Id. R.C. 2113.18(A) provides that "[t]he probate court may remove any executor or administrator if there are unsettled claims existing between him and the estate, which the court thinks may be the subject of controversy or litigation between him and the estate or persons interested therein."
 {¶ 31} The removal of a fiduciary pursuant to these statutory provisions "`rests within the sound discretion of the trial court, and a reviewing court will not reverse that decision absent a clear showing of abuse of that discretion.'" In re Estate of Shaw, Greene App. No. 2004 CA 111, 2005-Ohio-4743, ¶ 18, quoting In re Russolino (1990),69 Ohio App.3d 448, 450. Removal of a fiduciary "is an issue to be determined on a case-by-case basis. When the trial court carefully considers all facts in a case * * * the decision is then within the discretion of the trial court, and a reviewing court will not reverse that decision absent a clear showing of abuse of that discretion." In re Estate of JarvIs
(1980), 67 Ohio App.2d 94, 97.
 {¶ 32} "[I]t is desirable that [a fiduciary] be impartial as between heirs at law or next of kin of the decedent whose estate he is administering." In re Estate of Stauffer(App. 1943), 40 Ohio Law Abs. 254. "An executor or administrator * * * should be removed where his personal interests conflict with his official duties, or * * * where there is such a hostile feeling between him and the beneficiaries as would or might interfere with the proper management of the estate, * * *. However, the fact that the representative is a creditor of the estate has been held not alone sufficient ground for removal." Id., quoting 33 Corpus Juris Secundum 1036, Executors and Administrators, Section 90.
 {¶ 33} Here, our review of the record demonstrates that the probate court considered all the facts and evidence presented during the two-day hearing on appellants' exceptions to *Page 10 
the first partial account and motion to remove appellee as executrix, and concluded that appellee's removal was not warranted under the circumstances. First, with respect to the pending civil suit in which appellants have pursued claims against appellee, including a claim for wrongful death, the court found no basis for removing appellee and appointed appellant, Justin Jones, to serve as administrator ad prosequendum for purposes of that action. The court found, without considering the merits of appellants' claims, that the appointment of a special administrator would allow appellants to pursue their claims without affecting the administration of the estate and appellee's role as executrix. Notably, appellants have failed to demonstrate, through citation to legal authority or relevant evidence in the record, that appellee's involvement in a separate civil suit, prosecuted by a special administrator specifically appointed by the court for the matter, mandates her removal as executrix. Accordingly, we cannot say the probate court abused its discretion in denying appellants' motion to remove appellee on this basis.[2]
 {¶ 34} In addition, we find no abuse of discretion in the probate court's determination that a $20,000 claim appellee may have against the estate, for a loan she gave Perry prior to his death, is insufficient to warrant her removal as executrix. Our review of the record indicates the probate court ordered appellee to repay $20,000 to the estate that she had withdrawn to satisfy such claim, plus interest that would have accrued during the period this sum was absent from the estate account, because appellee did not formally present the claim as required by R.C.2117.02. In considering this issue, the court recognized that appellee "has made errors during the administration of this Estate, but those errors have either * * * been corrected or can be corrected within a reasonable time period, and if not corrected, the *Page 11 
Executrix may then be removed * * *."
 {¶ 35} The trial court was permitted to consider the testimony and evidence presented during the hearing in determining that appellee's removal was not warranted under the circumstances. Moreover, there was no evidence that the claim was being pursued. See R.C. 2113.18(A). Accordingly, we find the probate court did not abuse its discretion in denying appellants' motion to remove appellee as executrix on this basis.
 {¶ 36} Appellants also contend appellee's removal is warranted because she has a pecuniary interest in the outcome of the estate based upon a book she authored in which reference is made to Perry's illness and alleged recovery, and by virtue of the fact her son, Lawrence Bishop II, co-authored songs with Perry which have, or may result in, the payment of royalties. We find, however, that appellants have failed to present any legal authority or evidence to support their contention that the book appellee authored prior to her appointment as executrix gives rise to a conflict of interest warranting her removal. Moreover, our review of the record yields no indication that appellee's book has placed her in an adverse position with the estate and her duties as executrix.
 {¶ 37} With respect to the songs co-authored by appellee's son and Perry, the probate court determined that the enforcement of the right to receive royalties from these songs concerns appellee's role as trustee of the trust, rather than as executrix of the estate. The court found no present conflict of interest in the administration of Perry's estate based upon appellee's decision as trustee of whether to enforce the right to receive royalties, and that such questions and concerns may be addressed in the future as the trust is administered. We find the court acted within its discretion in reaching this conclusion, and in finding this matter did not constitute a basis for appellee's removal.
 {¶ 38} Finally, we note that appellants advance various instances of appellee's alleged "incompetency" in arguing that her removal is warranted, including her failure to include *Page 12 
"assets derived from the decedent's music companies" in the inventory of estate assets. Much of appellants' argument as to this issue concerns the "catalogue" of songs written by Perry. Our review of the record indicates the probate court ordered appellee to file a report with the court listing various items "in any way related to decedent's music catalogue and in which the decedent had any interest at the time of his death," but did not find this matter to be a basis for her removal.
 {¶ 39} Rather, and as previously stated, the court recognized that appellee has made errors in the administration of the estate, but opined that such errors have been corrected or "can be corrected within a reasonable time period, and if not corrected, the Executrix may then be removed * * *." As the court's order concerning items related to Perry's catalogue of music may resolve this issue, we find the probate court did not abuse its discretion in finding appellee's removal was not warranted on this basis.
 {¶ 40} In its conclusion, the probate court found that no grounds for appellee's removal pursuant to R.C. 2109.24 "currently exist," and that the "real controversy" between the parties concerns the trust "and other issue that are not before this Court." The court further found that the removal of appellee would result in additional administrative expenses, as the administration of the estate was "substantially completed before [appellants] filed their Motion to Remove the Executrix * * *." Significantly, the court also made clear that appellee would be required to comply with specific orders, including that she file a report listing items related to Perry's catalogue of songs, obtain a formal appraisal of any personal property remaining in storage, and that she obtain court approval before exercising any of her discretion with respect to her dealings with the trust.
 {¶ 41} After a careful review of the record, we find the trial court fully considered the facts and circumstances in determining that appellee should not be removed as executrix of Perry's estate. The probate court was in a better position to judge the credibility of the *Page 13 
witnesses and evidence during the hearing on this matter, and we must defer to the probate court where the record does not demonstrate a clear abuse of such discretion. See In re Estate of Kendall,171 Ohio App.3d 109, 2007-Ohio-1672,¶ 23; In re Estate of Jarvis, 67 Ohio App.2d at 97. Accordingly, appellants' second assignment of error is overruled.
 {¶ 42} Assignment of Error No. 3:
 {¶ 43} "THE TRIAL COURT ERRED BY ACCEPTING THE FIDUCIARY'S ACCOUNTING."
 {¶ 44} In their third assignment of error, appellants contend the trial court erred in accepting appellee's first partial account where appellee did not include in such account songs co-written by her son, Lawrence Bishop II, and Perry.
 {¶ 45} As a threshold matter, appellee asserts that the probate court's order accepting the first partial account is not a final appealable order. An appeal must be taken from a "final appealable order" to vest jurisdiction with a court of appeals. General Acc. Ins.Co. v. Ins. Co. of N. America (1989), 44 0hio St.3d 17, 20. A list of what constitutes a final appealable order is set forth in R.C.2505.02(B). The applicable subsection (B)(2) provides as follows: "An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is * * * [a]n order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment[.]"
 {¶ 46} Generally, matters related to estate administration, such as the filing of exceptions to a fiduciary's inventory or account, are treated as special proceedings. In re Estate of Lilley (Dec. 20, 1999), Warren App. Nos. CA99-07-083, CA99-07-088, CA99-07-084, CA99-07-087, at 4; In the Matter of the Estate of Depugh (Mar. 31, 1995), Miami App. No. 94CA43, 1995 WL 136996, at *2. Further, a probate court entry that affects a substantial right regarding a claim against an estate is considered to be a final appealable order. Lilley, at 5, citing In reEstate of Wyckoff (1957), 166 Ohio St. 354. *Page 14 
 {¶ 47} With respect to court orders concerning a fiduciary's account, this court has previously held that "the probate court entries appealed from must * * * actually approve or settle the inventory or account ruled upon" to constitute final appealable orders. Id. at 5-6. (Emphasis added.) "Rulings on exceptions alone do not affect "substantial rights" as defined in R.C. 2505.02(A)(1). Future relief is not foreclosed because the exceptions can be reviewed when the probate court actually conducts the statutorily required hearing to settle the inventory or account." Id. at 6.
 {¶ 48} Pursuant to R.C. 2109.32(A), "[e]very fiduciary's account required * * * shall be set for hearing before the probate court. * * * At the hearing * * * the court shall inquire into, consider, and determine all matters relative to the account and the manner in which the fiduciary has executed the fiduciary's trust * * * and may order the account approved and settled or make any other order as the court considers proper." Significantly, pursuant to R.C. 2109.35, "[t]he order of the probate court upon the settlement of a fiduciary's account shall have the effect of a judgment * * *." See, also, In re Stayner (1878),33 Ohio St. 481, (holding that "the filing of exceptions to an account of an executor or administrator in the settlement of an estate, raises a matter of dispute between the exceptor and such executor or administrator as [to] the items of said account excepted to" and "[w]hen such matter * * * has been duly heard and determined by the court, it can not again be called in question by either of the same parties on the hearing of a subsequent account, without leave of the court.")
 {¶ 49} In this case, the record indicates that the probate court conducted a hearing on appellee's first partial account and appellants' exceptions thereto, and subsequently issued an entry overruling the exceptions, in part, sustaining the exceptions, in part, and "otherwise approving [the] first partial account." The probate court's March 5, 2007 entry states: "[U]pon hearing the Fiduciary's First Partial Account * * * and the exceptions thereto, this Court finds that the First Partial Account has been lawfully administered, except as hereinabove set forth, *Page 15 
and that the Fiduciary's First Partial Account is therefore approved and settled." Accordingly, to the extent the court's order determines issues raised by appellants in their exceptions to the first partial account, the court's order is final.
 {¶ 50} As to the merits of their argument, appellants argue appellee should be required to account for a number of songs co-written by her son and Perry, as such are assets of "the estate and/or trust." Appellants argue the trial court erred in determining it "unnecessary for [appellee] or her son to pay royalties to the estate or trust for the use or sale of these songs." Further, appellants contend the trial court erred in justifying this decision by finding appellee's son has not yet recouped production costs of the subject songs.
 {¶ 51} As an initial matter, we note appellants' confusion regarding the probate court's analysis as to this issue, as the probate court's decision appears to indicate that appellee may not be required to enforce the estate's rights to receive royalties from songs co-authored by Perry. However, upon a critical reading of the court's decision, we find the court did conclude that the "copyrights owned by the decedent at the time of his death and any right to receive royalties from these songs should be listed on the Inventory, and if not sold to pay theestate's debts, transferred to the Darrell Wayne Perry Trust." (Emphasis added.)
 {¶ 52} With respect to the court's indication that appellee may not be required to enforce the rights to any such royalties, we find the court addressed such issue in the context of determining whether appellee should be removed as executrix of the estate. Our reading of the court's decision indicates the court found that appellee's failure to include the subject copyrights in the inventory did not constitute grounds for her removal, because the enforcement of such rights may not prove to be cost effective. While the court seemed to recognize that any claim of appellants as to this issue is "more properly * * * directed at the Trustee of the Trust," the court opined that "a reasonable person would conclude that the cost of attempting to enforce these rights against Lawrence Bishop II would greatly exceed the *Page 16 
probable benefit to the Estate."
 {¶ 53} While this conclusion may have supported the court's decision concerning appellants' request to remove appellee for failing to account for the copyrights and royalties at issue, it is certainly not determinative of the ultimate issue of whether appellee will be required, under the terms of the trust, to enforce the rights concerning these royalties. As the court recognized in its decision, issues related to the trust, on the matter of which appellants filed an action in the general division of the common pleas court, will be left for the general division's determination.
 {¶ 54} Because the probate court indicated, both in its analysis concerning the songs co-authored by Perry and Lawrence Bishop II, and other songs in which Perry had an ownership interest, that such copyrights should be listed in the inventory, we find appellants' assignment of error not well-taken. Further, because the court indicated that any copyrights should be listed in the inventory, which has not yet been approved or accepted by the court, we find any argument by appellants concerning the value of royalties received or to be received, is premature. Accordingly, appellants' third assignment of error is overruled.
 {¶ 55} Assignment of Error No. 4:
 {¶ 56} "THE TRIAL COURT ERRED BY DETERMINING THAT THE FIRST FINANCIAL BANK ACCOUNT WAS NOT PART OF THE PERRY FAMILY TRUST AND THE TRUST WAS NOT FUNDED PRIOR TO DEATH."
 {¶ 57} In their final assignment of error, appellants contend the trial court erred in determining that Perry's First Financial bank account was not part of the trust, and that the trust was not funded prior to Perry's death. As stated, we review a probate court's findings for an abuse of discretion. In re Bird, 2005-Ohio-2186 at ¶ 8. As to its factual determinations, a probate court's decision "will not be reversed where there is some competent, credible evidence going to all essential elements of the case." Whitaker, 105 Ohio App.3d at 53. *Page 17 
 {¶ 58} In this case, the probate court determined that the First Financial account was an estate account, and further, that the account was not a trust asset because it was designated "joint-with survivorship" on the signature card executed by both Perry and appellee. The Ohio Supreme Court has held that "the opening of an account in joint and survivorship form shall, in the absence of fraud, duress, undue influence or lack of mental capacity on the part of the depositor, be conclusive evidence of the depositor's intention to transfer to the survivor the balance remaining in the account at the depositor's death."Wright v. Bloom, 69 Ohio St.3d 596, 607, 1994-Ohio-153. "The survivorship rights under a joint and survivorship account of the co-party or co-parties to the sums remaining on deposit at the death of the depositor may not be defeated by extrinsic evidence that the decedent did not intend to create in such surviving party or parties a present interest in the account during the decedent's lifetime." Id., at paragraph one of the syllabus.
 {¶ 59} In this case, evidence was presented concerning the First Financial bank account, indicating that such account was designated "joint-with survivorship." Specifically, the signature card for said account was executed by both Perry and appellee on September 24, 2003, and clearly designates said account as "joint-with survivorship" in the "ownership" section of the document. An "x" is marked in the box next to "joint-with survivorship," while the other listed ownership options, including "individual," "joint-no survivorship," "trust-separate agreement," "revocable trust," and "pay-on death," are left unmarked.
 {¶ 60} Our review of the record yields no evidence of fraud, duress, undue influence or lack of mental capacity as to Perry to defeat the conclusive nature of the account in question. Accordingly, we find no error in the probate court's determination that the subject account was not a trust asset.
 {¶ 61} Based upon the foregoing, we find no merit to appellants' contention that the trust was funded, prior to Perry's death, by the creation of the First Financial bank account. *Page 18 
Similarly, we find no merit to appellants' contention that the trust was funded, prior to Perry's death, by virtue of Perry's designation of appellee as beneficiary of his life insurance policy. We have already found the probate court did not err in determining the life insurance proceeds were payable to appellee in her individual capacity, and not as trustee of the subject trust.
 {¶ 62} With respect to appellants' contention that the trust was funded where Perry acknowledged in the trust agreement that he "delivered" a catalogue of his songs to the trustee of said trust, we find the trial court properly concluded that no evidence was presented to demonstrate that such delivery had in fact occurred. "Trust law is based on the concept of separate ownership of equitable and legal interests." Hatch v. Lallo, Summit App. No. 20642, 2002-Ohio-1376, at *2, citing Jones v. Luplow (1920), 13 Ohio App. 428, 432. "Ordinarily, a settlor's transfer of the trust property's legal title to a trustee accomplishes this separation. It follows that the present transfer of property to the trustee is crucial when the settlor is not also the trustee, since without legal title the trustee holds nothing in trust." Id.
 {¶ 63} In this case, the probate court found that the catalogue in question was not delivered to appellee as trustee. While the trust agreement provides, "Settlor states and acknowledges that the Catalogue has been delivered to the Trustee," appellee testified that she never received the catalogue. As the fact finder, the probate court believed appellee. Accordingly, we find the probate court did not err in determining the catalogue was not "delivered" to appellee as trustee of the trust at the time the trust agreement was executed in September 2003.
 {¶ 64} Similarly, appellants have failed to present evidence indicating that appellee "took possession of physical assets," such as Perry's collection of gold coins, as trustee for the benefit of the trust beneficiaries. We therefore find no error with respect to the probate court's treatment of the coins and other assets as estate, rather than trust, assets. *Page 19 
 {¶ 65} Based upon the foregoing, we overrule appellants' fourth assignment of error.
 {¶ 66} Judgment affirmed.
YOUNG, P.J. and WALSH, J., concur.
[1] On March 5, 2007, the probate court journalized an entry "overruling the exceptions * * *, in part, sustaining exceptions * * *, in part, and otherwise approving fiduciary's first partial account and making additional orders concerning the further administration of decedent's estate," for the reasons set forth in its February 12, 2007 opinion. The court ordered appellee to file a report with the court listing "all copyrights for individual songs or recordings, etc., or contracts with ASCAP, BMI, OR ZOMBA, or any other similar entity, that are in any way related to decedent's music catalogue and in which the decedent had any interest at the time of his death * * *." The court also ordered appellee to seek and obtain court approval before she "further exercises any of the discretion granted to her * * * with respect to her dealings with the * * * Trust," and to reimburse the estate $716.66 in interest for "the loss to the Estate of the use of $20,000 that was erroneously paid by the Executrix, but later returned to the Estate * * *."
[2] We note that appellants also allege the probate court erred in appointing Jones as special administrator "for the limited purpose" of the civil suit, because he has been unable to obtain documents necessary to fully prosecute the claims pending in that action. We find, however, that any issues concerning the progression of the civil suit are not properly before this court. *Page 1